IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL CASE NO. 1:17-CR-137-TCB-LTW |
| v. | |
| KEOLA SPENCE, | |
| Defendant. | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court are Defendant Keola Spence's Motion to Suppress Evidence (Doc. 14), Motion to Suppress Statement (Doc. 15), and Motion for Extension of Time for File Post-Hearing Brief (Doc. 22). For the reasons outlined below, Defendant's Motions to Suppress Evidence should be **DENIED** (Doc. 14, 15), and Defendant's Motion for Extension of Time to File Post-Hearing Brief (Doc. 22) is **DEEMED MOOT**.

### MOTION FOR EXTENSION OF TIME TO FILE POST-HEARING BRIEF

In Defendant's Motion for Extension of Time to File Post-Hearing Brief (Doc. 22), Defendant seeks a two-week extension of time to file his post-hearing brief in connection with his Motions to Suppress. Defendant requests that the deadline for filing his post-hearing brief be extended to December 12, 2017. Thereafter, on December 13, 2017, Defendant filed a second Motion for Extension of Time to File a Post-Hearing

Brief (Doc. 23), requesting through and including December 15, 2017, for filing his post-hearing brief. This Court granted Defendant's second motion for extension of time on December 13, 2017. (Doc. 24). Accordingly, Defendant's first motion to extend the deadline for filing his post-hearing brief is now **MOOT**. (Doc. 22).

## MOTION TO SUPPRESS STATEMENT

In Defendant's Motion to Suppress Statement, Defendant perfunctorily argues that at some point, the Government obtained custodial and/or recorded statements from him. (Doc. 15, at 2). Defendant argues the Court must hold an evidentiary hearing in order to determine whether his statements were made freely and voluntarily and were lawfully recorded. This Court held an evidentiary hearing on the matter on October 4, 2017. (Doc. 20). Following the hearing, Defendant prepared a post-hearing brief, but never addressed his former arguments that his statements should be suppressed. Because Defendant never perfected his Motion to Suppress Statement as to any of his original arguments for suppression raised in his opening brief, they have been abandoned. See United States v. Rosso, No. 3:14-CR-00014-TCB, 2015 WL 7115860, at *28 n.26 (N.D. Ga. Nov. 12, 2015); United States v. Cadet, No. 1:11-CR-00522-WBH, 2013 WL 504892, at *9 (N.D. Ga. Jan. 16, 2013), R. & R. adopted, No. 1:11-CR-113-WBH-2, 2013 WL 504815 (N.D. Ga. Feb. 8, 2013); United States v. Chappell, No. 1:10-CR-513-WSD-ECS, 2011 WL 5353016, at *5 (N.D. Ga. May 25, 2011) (deeming argument defendant raised in pre-hearing motion, but did not expound upon in post-hearing briefs, to be waived and abandoned); United States v. Shorr, No. 1:07-CR-182-1-TWT, 2008

2

AO 72A
(Rev.8/82)

WL 655994, at *1 (N.D. Ga. Mar. 10, 2008) (same).  Accordingly, Defendant's Motion to Suppress Statement should be **DENIED**.  (Doc. 15).

## MOTION TO SUPPRESS EVIDENCE

On April 18, 2017, a grand jury in the Northern District of Georgia returned an Indictment charging Defendant with knowingly possessing a firearm after having been convicted as a felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1).  Defendant, who is a parolee, argues physical evidence obtained during a search of his apartment on December 7, 2016, should be suppressed because the officers completing the search did not have reasonable suspicion to conduct the search.  (Doc. 26).

## I.    FACTUAL BACKGROUND

On April 20, 2016, Defendant's parole relating to prior offenses of aggravated assault, possession of a firearm by a convicted felon, and possession of marijuana with intent to distribute, became effective.  (Gov't Ex. 1, at 1).  On April 27, 2016, Defendant was processed by the Department of Community Supervision ("DCS") in Cobb County.  (Tr. of Oct. 4, 2017 Evid. Hr'g, hereinafter "Tr.," 5-6).  At that time, Tyriqe Williams ("Williams"), who is a DCS supervision officer, performed intake functions for Defendant.  (Tr. 5).  During intake, parolees or probationers visit the supervision office where they are advised of the terms and conditions of their supervision, they sign necessary documents to complete supervision, they are drug screened, their addresses and contact information are verified, and their photos are taken.  (Tr. 6).  During intake, Defendant indicated that upon being released from a

3

custodial sentence in the Georgia Department of Corrections, he would reside at 304 Westwood Parkway, Apartment 5, in Austell, Georgia. (Tr. 7-8). During intake, Williams also discussed with Defendant a document entitled "Standard Conditions Under Which This Parole Is Granted." (Tr. 7; Gov't Ex. 1, at 2). The document sets forth six standard conditions of parole, including a search provision entitled "Law/Immediate Notification/Searches." (Id. at 2). The search provision provides:

> I will not violate the law of any governmental unit. I will immediately notify my parole officer if I am arrested for any offense, including a traffic offense. My parole officer or any other parole officer may, at any time, conduct a warrantless search of my person, papers, and place of residence, automobile, or any other property under my control.

(Id.). Williams specifically went over the search provision with Defendant. (Tr. 7). At the end of the same page, Defendant signed the document indicating that he fully understood the preceding standard parole conditions and that he agreed to comply with them. (Gov't Ex. 1, at 2). Additionally, Defendant's parole certificate indicated that he was subject to voice recognition monitoring, substance abuse assessments, and $30.00 monthly payments to the Georgia crime victim's compensation fund. (Gov't Ex. 1, at 1).

Between May and November 2016, DCS conducted monthly compliance checks at Dfendant's residence. (Tr. 33-34; Gov't Post-Hr'g Br. 3-4 n.4). No searches occurred on any of those occasions. (Tr. 33; Gov't Post-Hr'g Br. 3-4 n.4). On December 7, 2016, Williams, other DCS officers, federal agents, and officers from the Cobb County Sheriff's Office Viper Unit arrived at Defendant's residence on Westwood

4

Parkway to conduct a "compliance check," including a search of the residence. (Tr. 8, 10, 23-24, 26). Approximately eight to ten officers were present at the time. (Tr. 25). Williams had no indication Defendant had violated any of the conditions of his parole or that he was engaged in criminal conduct. (Tr. 26-27).

DCS Officers Williams and Hunter encountered Defendant with a group of other individuals outside his apartment building. (Tr. 10, 11). The officers approached Defendant and advised him they were there to conduct a compliance check. (Tr. 10-11). Initially, Defendant refused to allow the officers into his apartment. (Tr. 12). Defendant relented, however, after the officers told him he did not have the option of refusing the search of his residence under the terms of his parole agreement. (Tr. 10, 28). Defendant opened the door to his apartment and allowed the officers inside. (Tr. 10, 28).

DCS Officers conducted a protective sweep of the apartment for their safety. (Tr. 12, 32). Next, DCS Officers conducted a search of the apartment, finding: a large-barreled shotgun (and ammunition for same); a sawed-off shotgun; two digital scales; suspected marijuana residue; an empty glock box; and several "burner" cell phones. (Tr. 14-15). DCS officers also seized a smart phone from Defendant's person. (Tr. 15). During the compliance check and search, no officer threatened Defendant. (Tr. 11, 13).

## II.   **LEGAL ANALYSIS**

Defendant argues evidence seized during the search of his residence should be suppressed because law enforcement officers did not have reasonable suspicion that he

was engaging in criminal activity or had violated the terms of his parole.  In support, Defendant acknowledges a Supreme Court case, <u>Samson v. California</u>, 547 U.S. 843 (2006), in which the Court upheld a warrantless search of a parolee on the grounds that the parolee in that case had a diminished expectation of privacy and the state had a considerable interest in supervising parolees.  Defendant argues, however, <u>Samson</u> is distinguishable because California had adopted a condition of parole requiring parolees to submit to suspicionless searches by a parole officer and explicitly advised parolees that they were subjected to searches by probation, parole, or other peace officers at any time of the day or night, with or without a warrant, and with or without cause. Defendant further argues that <u>Samson</u> is further distinguishable because parolees in Georgia, unlike the parolees subject to the California law in <u>Samson</u>, are not specifically told that the search may occur "without cause."  Defendant contends that Georgia case law requires that reasonable suspicion must exist before a warrantless search of a parolee is conducted.

The undersigned finds the warrantless search in this case was reasonable.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The United States Supreme Court determines whether a search is reasonable within the meaning of the Fourth Amendment by examining the totality of the circumstances.  <u>Samson</u>, 547 U.S. at 848.  The reasonableness of a search "is determined by assessing, on the one hand, the degree to

which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." United States v. Knights, 534 U.S. 112, 118-19 (2001); United States v. Johnson, 579 F. App'x. 920, 925 (11th Cir. 2014); United States v. Yuknavich, 419 F.3d 1302, 1309 (11th Cir. 2005).

In Samson v. California, 547 U.S. 843 (2006), the United States Supreme Court evaluated whether a police officer could conduct a search of a parolee without having reasonable suspicion that the parolee was engaged in unlawful behavior. In that case, the parolee was subject to a state law which provided that all parolees "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." Id. at 846. When assessing whether the search was lawful, the Supreme Court balanced the defendant's reasonable expectation of privacy with the degree to which the search is needed for the promotion of legitimate governmental interests. Id. at 848, 851-53. The Court examined the petitioner's privacy interests and explained that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment." Id. at 850. The Supreme Court further reasoned that "parole is an established variation on imprisonment of convicted criminals" which allows release from prison "before the completion of a sentence on the condition that the prisoner abide by certain rules during the balance of the sentence." Id. at 850. Thus, "parolees enjoy even less of the average citizen's absolute liberty than do probationers." Id. at 850. Furthermore, the Supreme Court found the defendant's expectation of privacy further

7

diminished by the fact that he signed an order submitting to suspicionless searches by parole officers or peace officers at any time. Id. at 852. The Supreme Court also found it salient that the defendant remained in the legal custody of the California Department of Corrections through the remainder of his sentence and had to comply with conditions of parole, such as mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers. Samson, 547 U.S. at 851. At the other end of the balance scales, the Supreme Court found that California's interests in combating recidivism and promoting reintegration into society were substantial, thus warranting privacy intrusions. Id. at 853. The Supreme Court explained that imposing a reasonable suspicion requirement would "give parolees greater opportunity to anticipate searches and conceal criminality." Id. at 854. Weighing the parolee's privacy interests against the government interests at stake, the Supreme Court held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Id. at 857.

Just as the defendant in Samson, Defendant Spence also has a greatly diminished expectation of privacy. Like Samson, Defendant Spence was also a parolee and the State Board of Pardons and Paroles imposed conditions which greatly restricted his freedom. The State Board of Pardons and Paroles required that he be placed on voice recognition monitoring and submit to substance abuse assessments upon his release. (Gov't's Ex. 1, at 1). Defendant also agreed to participate in a rehabilitation plan designed by his parole officer, to submit to drug tests, to notify his Parole Officer if he

8

was arrested for any offense, and not to possess a firearm or ammunition. (Gov't's Ex. 1, at 2). Additionally, Defendant was required to maintain regular employment or, if he did not already have a high school diploma or equivalent, he was required to attend school to pursue a general education diploma. (Id.). Defendant also agreed as a condition of his parole to not leave the state, even briefly, or change his residence without first getting permission from his parole officer. (Id.). Most importantly, Defendant agreed to greatly reduce his expectation of privacy and submit to warrantless searches of his person, papers, and place of residence. (Id.). Given Defendant's status as a parolee and his acceptance of numerous parole conditions which reduced his freedom, Defendant did not have a reasonable expectation of privacy. See Johnson, 579 F. App'x at 925-26 (concluding that because Georgia parolee agreed in writing that the parole officers may, at any time, conduct warrantless searches of his residence as a condition of parole and he submitted to the condition by signing the Parole Certificate, he did not have a reasonable expectation of privacy); United States v. Stewart, 213 F. App'x 898, 899 (11th Cir. 2007) (concluding that Georgia parolee did not have expectation of privacy where his parole certificate required him to submit to a search "at any time" without a warrant).

On the other hand, the State of Georgia has a strong concern that a parolee will be more likely than an ordinary member of the community to engage in criminal conduct. Knights, 534 U.S. at 121. Therefore, the State of Georgia's focus on parolees, more so than the average citizen, is justified because of its interest in protecting

9

potential victims of criminal enterprise.  Knights, 534 U.S. at 121.  Additionally, the

State of Georgia has a substantial interest in supervising parolees in order to reduce

recidivism and promote reintegration.  Johnson, 579 F. App'x at 925-26 (concluding

that Georgia "has an overwhelming interest in supervising parolees to reduce recidivism

and promote reintegration into society"); Stewart. 213 F. App'x at 899.  The Supreme

Court has repeatedly reiterated that a State's interest in reducing recidivism and thereby

promoting reintegration and positive citizenship among probationers and parolees

warrant privacy intrusions that would not otherwise be tolerated under the Fourth

Amendment.  Knights, 534 U.S. at 121; Griffin v. Wisconsin, 483 U.S. 868, 879 (1987).

Under these circumstances, the conditions of Defendant's release so diminished his

expectation of privacy that even a suspicionless search does not violate the Fourth

Amendment.  Samson, 547 U.S. at 853-57; Johnson, 579 F. App'x at 925-26 (holding

that warrantless and suspicionless search of Georgia parolee's home did not violate the

Fourth Amendment because he had no expectation of privacy given that he agreed that

parole officers could conduct warrantless searches of his home at any time as a

condition of parole and Georgia had overwhelming interest in supervising parolees to

reduce recidivism); Stewart, 213 F. App'x at 899 (holding that warrantless and

suspicionless search of a Georgia parolee's home did not violate the Fourth Amendment

because parole certificate required him to submit to search of home at any time without

a warrant); United States v. Wade, No. 1:11-CR-0337-WBH-CCH, 2012 WL 279431,

at *5 (N.D. Ga. Jan. 4, 2012).

AO 72A
(Rev.8/82)

Defendant, citing the DCS website's discussion of the standard and special conditions of supervision for parolees, contends that the result in this case should be different because the search provision allowing warrantless searches of Defendant's property did not appear to be a standard or special condition of parole supervision. Defendant appears to contend that this distinction makes the Supreme Court's holding in Samson distinguishable. While the DCS's website does not identify Defendant's search provision as a standard condition of parole or a special condition of supervision, the website makes clear that the list of special conditions of supervision appearing on the website was not exhaustive and that additional special conditions of supervision may be imposed at the discretion of the State Board of Pardons and Paroles. Dep't of Cmty. Supervision, https://dcs.georgia.gov/special-conditions-supervision-0 (last visited Apr. 19, 2018). Consistent with the information on the DCS's website, the State Board of Pardons and Paroles did impose additional conditions and indicated that the search provision was one of the "Standard Conditions Under Which This Parole Is Granted." (Gov't's Ex. 1, at 2). Furthermore, even if Defendant may have identified a distinction between the facts of this case and those in Samson, Defendant has failed to demonstrate why the distinction is one that makes a difference. Defendant points to no language within Samson tending to show that question of whether the condition of parole is standard or special is particularly impactful in the analysis when balancing the interests between Defendant's expectation of privacy, the degree of intrusion on privacy, or the degree to which the search is necessary to promote legitimate governmental interests.

11

Moreover, Defendant fails to explain why the search of his residence was made more unreasonable merely because DCS might not have required every parolee to submit to warrantless searches as part of its standard conditions.

Defendant further argues Georgia case law does not permit the warrantless search of his residence unless it was justified by reasonable suspicion.   Defendant acknowledges, however, that Georgia statutory law provides no indication of whether reasonable suspicion is required for the warrantless search of a parolee.  Defendant instead relies upon two Georgia Court of Appeals cases, Thomas v. State, 287 Ga. App. 163 (2007) and State v. Cauley, 282 Ga. App. 191 (2006), which have held that "a search made to a special condition of parole that is based upon a reasonable or good faith suspicion of criminal activity is permissible."  Thomas, 287 Ga. App. at 166-67; Cauley, 282 Ga. App. at 195.

In both Thomas and Cauley, warrantless searches were conducted by law enforcement officers who were reasonably suspicious that the defendants who were parolees had violated the law.  In both cases, the Georgia Court of Appeals noted that in Georgia, a warrantless search of a *probationer* was permitted as special condition of probation where the *probationer's* conduct is reasonably suggestive of criminal activity. Thomas, 287 Ga. App. at 166-67; Cauley, 282 Ga. App. at 194-95.  The Georgia Court of Appeals in both cases then observed that parolees have an even lower expectation of privacy than probationers and concluded that the searches were not unreasonable because they were justified by reasonable suspicion.  Thomas, 287 Ga. App. at 166-67;

12

Cauley, 282 Ga. App. at 195.  Nowhere in Thomas or in Cauley did the Georgia Court of Appeals conclude that a warrantless search of a parolee must be justified by reasonable suspicion.  In fact, in both cases, the Court of Appeals observed that parolees have less expectation of privacy than probationers because parole is more akin to imprisonment.  Therefore, neither Thomas nor Cauley provide support for the notion that under Georgia law, law enforcement officers *must* have reasonable suspicion that a parolee is violating the law before they can perform a warrantless search of the parolee's property.

Defendant also argues the Government has the burden of establishing that Georgia law allows the search of a parolee without reasonable suspicion because the Government has the burden of proving that a warrantless search falls within one of the specifically established exceptions.  The Government does not have the burden of establishing that the search was permitted under Georgia law for the purpose of establishing whether the search was unconstitutional under the Fourth Amendment. Whether or not a search is reasonable within the meaning of the Fourth Amendment has never depended on the law of the particular state in which the search has occurred. California v. Greenwood, 486 U.S. 35, 43 (1988) (explaining that the fact that warrantless search of garbage left for pick up outside curtilage of home was impermissible under California law did not mean defendant's expectation of privacy in his garbage should be deemed reasonable as a matter of federal constitutional law and explaining that Fourth Amendment analysis instead turns on factors such as societal

13

understanding); see also Virginia v. Moore, 128 S. Ct. 1598, 1604 (2008); United States v. Bembry, 321 F. App'x 892, 894 (11th Cir. 2009) (explaining that "[t]he admissibility in federal court of the products of state searches and seizures is controlled by federal law"); United States v. Blagmon, No. 2:13–CR–00022, 2013 WL 4787013, at *1 (S.D. Ga. Sept. 6, 2013). Here, regardless of whether the suspicionless search was specifically authorized by Georgia statutory law or case law, it is clear that Defendant did not have a reasonable expectation of privacy because as a parolee, his freedom was greatly restricted and he agreed in writing that his place of residence or any other property under his control could be searched at any time.    In doing so, Defendant received no assurances that his parole officer must first have reasonable suspicion before conducting a search of his place of residence.   (Gov't's Ex. 1, at 2).   Accordingly, as discussed above, the balance of interests weighed against Defendant, and this Court agrees with several other courts within the Eleventh Circuit which have concluded that similar warrantless searches did not violate the Fourth Amendment.  See, e.g., Johnson, 579 F. App'x at 925-26 (concluding that where Georgia parolee agreed in writing that the parole officers may, at any time, conduct warrantless searches of his residence as a condition of parole and he submitted to the condition by signing the Parole Certificate, he did not have a reasonable expectation of privacy); Stewart. 213 F. App'x at 899 (concluding that Georgia parolee did not have expectation of privacy where his parole certificate required him to submit to a search "at any time" without a warrant); United States v. Wilcher, No. 1:10-CR-25-TWT-LTW, 2010 WL 5678676, at *4 (N.D. Ga. Dec.

14

17, 2010); cf. United States v. Yeary, 740 F.3d 569, 581-82, 584-87 (11th Cir. 2014).

Therefore, Defendant's Motion to Suppress Evidence should be **DENIED**.  (Doc. 14)

<u>**CONCLUSION**</u>

Based on the foregoing reasons, Defendant's Motions to Suppress should be **DENIED**.  (Docs. 14, 15).  Defendant's Motion for Extension of Time for File Post-Hearing Brief (Doc. 22) is **DEEMED MOOT**.  As there are no further motions pending, the undersigned certifies this case ready for trial.  The Clerk is directed to terminate the reference to the undersigned.

**SO ORDERED AND REPORTED AND RECOMMENDED** this  20  day of April, 2018.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)